UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
NOV - 2 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

FRANCINE C. VERHAGEN,

Plaintiff,

v.

26-CV-45 (JLS)

TOWN OF ORCHARD PARK; OFFICER THOMAS FOWLER #98, *individually*; OFFICER MICHAEL LOCOCO #202, *individually*; OFFICER ALEX VRANIC #93, *individually*; DISPATCHER LOUIS ANDOLINA #120, *individually*; OFFFICER JAMES PUTNAM, *individually*; FORMER CHIEF PATRICK M. FITGERALD, *individually*; CHIEF BRENDON O'HARA, *in his official capacity only*; JOHN/JANE DOE OPPD OFFICERS 1-10, *individually*; and JOHN/JANE DOES OPPD SUPERVISORS 1-5, *individually*,

Defendants.[1]

**DECISION AND ORDER**

*Pro se* Plaintiff Francine C. VerHagen commenced this action alleging violations of her civil rights under 42 U.S.C. § 1983 arising out of alleged constitutional violations committed by Defendant Town of Orchard Park Police Department ("OPPD") and its officers. *See* Dkt. 1. After granting Plaintiff's

[1] The Clerk of Court is directed to the amend the caption as it appears above.

application to proceed *in forma pauperis*, the Court screened her complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). Dkt. 3 (the "initial screening order").[2]

The initial screening order permitted Plaintiff's Fourteenth Amendment procedural due process and First Amendment claims to proceed to service, but otherwise dismissed the complaint with leave to amend. *Id.* at 17. Thereafter, Plaintiff timely filed an amended complaint. Dkt. 5.

Having now screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff's Fourth Amendment, First Amendment retaliation, Fourteenth Amendment equal protection, municipal liability, and state law claims may proceed to service as identified below. With the exception of Plaintiff's Fourteenth Amendment procedural due process claim arising from the post-seizure procedure to obtain her vehicle—which is dismissed with leave to amend—Plaintiff's remaining claims are dismissed without leave to amend.

## DISCUSSION

### I. Legal Standards

A court shall dismiss a complaint in a civil action in which an individual granted *in forma pauperis* status seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

[2] Plaintiff's familiarity with the initial screening order is presumed and will not be repeated herein.

§ 1915(e)(2)(B)(i)-(iii).

A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007), but permission to amend is not required where the plaintiff has been afforded a prior opportunity to amend, *Cato v. Zweller*, No. 6:21-CV-6207 EAW, 2023 WL 8653857, at *2 (W.D.N.Y. Dec. 14, 2023) (dismissing the amended complaint with prejudice because it "does not remedy any of the pleading deficiencies identified in the Screening Order").

## II. The Allegations

Plaintiff "has a documented history as a victim of domestic violence involving the father of her children, Jason Hill." Dkt. 5 at ¶ 22. In 2019, Officer James Putnam ("Putnam") responded to a "domestic incident" at Plaintiff's home and had personal knowledge that Plaintiff was a domestic violence victim. *Id.* at ¶¶ 23-24.

"In 2023, Alexa Jackson, a babysitter and caretaker aligned with [Hill] . . . made harassment allegations about Plaintiff to [the] OPPD. *Id.* at ¶ 26. Officer Alex Vranic ("Vranic") and Dispatcher Louis Andolina ("Andolina") received and processed these reports. *Id.* at ¶ 27. Thereafter, Plaintiff went to the "OPPD

headquarters . . . to report . . . Jackson's false claims and custodial interference[,]" but was "met with aggression, dismissed without any report being filed, and denied the opportunity to speak with a higher-ranking officer." *Id.* at ¶ 28.

On May 18, 2025, Plaintiff returned to the "OPPD headquarters to file a report concerning" Hill's "refusal to return personal property" and "custodial interference by Alexa Jackson and her mother[.]" *Id.* at ¶ 30. But Putnam and an unidentified supervisor "refused to take Plaintiff's report, even though . . . Putnam had personally responded to the 2019 domestic incident in which Plaintiff was the victim." *Id.* at ¶ 32. Plaintiff "was told that the matter was 'family drama,' that police do not write reports for 'family court matters,' and that she should 'go back to court' or 'get a lawyer.'" *Id.* at ¶ 33. Chief Patrick Fitzgerald ("Fitzgerald") failed to respond to Plaintiff's complaints or grievance about this incident. *Id.* ¶¶ 36-38.

In the weeks prior to August 18, 2025, "law enforcement appeared during Plaintiff's child exchanges [with Hill] on multiple occasions in response to reports about Plaintiff." *Id.* at ¶ 39. While dropping off her children at Hill's residence on August 18, 2025, two police vehicles and Crisis Services personnel were waiting for her in the parking lot. *Id.* at ¶ 40. She "left the location calmly[ ] to keep her children from being further upset." *Id.* ¶ 41. Police followed her vehicle and Officers Thomas Fowler ("Fowler") and Michael LoCoco ("LoCoco"), as well as "at least two additional OPPD officers," performed a traffic stop despite no mention of any traffic violation in the "welfare-check report." *Id.* at ¶¶ 43-45.

Fowler issued Plaintiff a traffic violation for having "inadequate or no stop lamps." *Id.* at ¶ 46. Records show that the call was dispatched after the ticket was issued. *Id.* Body-worn camera footage also contains no evidence supporting the violation and the vehicle had passed inspection less than two weeks earlier. *Id.* at ¶ 48-49.

"During the stop, Plaintiff was calm and compliant. She did not threaten anyone, did not express any intent to harm herself or others, and did not behave in a way that suggested she was a danger to herself or others." *Id.* at ¶ 53. Crisis Services personnel, were on the scene and asked for "her health-insurance information so that her insurance could be billed." *Id.* at ¶ 54. Plaintiff was "repeatedly told" by the officers "to get out of her car and get into an ambulance but would not tell her why." *Id.* at ¶ 55. Although Plaintiff "remained calm, did not argue, and only asked questions . . . , the officers became aggressive." *Id.* Notwithstanding her compliance, "an officer grabbed and twisted her wrist, causing pain and injury and damaging her cell phone. Officers then forced Plaintiff into an ambulance." *Id.* at ¶ 56. "During the incident, one officer told Plaintiff, 'I don't care. Everyone sues us.'" *Id.* at ¶ 57.

Plaintiff was transported to the Erie County Medical Center ("ECMC") for a "mental-health evaluation." *Id.* at ¶ 58. "ECMC evaluated Plaintiff and discharged her . . . the next morning, without admitting her." *Id.* at ¶ 60. The evaluation prepared by ECMC "noted that the incident appeared to be retaliation related to domestic violence." *Id.*

At the time of the traffic stop, Plaintiff was driving a vehicle owned by her parents, which she used with their permission "as her regular means of transportation." *Id.* at ¶ 62. Although the vehicle was "safely and lawfully pulled over on the roadside" and Plaintiff "understood that someone would be allowed to pick the vehicle up[,]" it was towed. *Id.* at ¶ 64.

A police report indicates that officers observed an item in the vehicle, but that item, which was "inside a bag, inside another bag, in the trunk, . . . could not have been seen without opening the trunk and both bags." *Id.* at ¶ 65. Plaintiff believes that the "tow was not necessary for public safety or to protect the vehicle" and that it was "not carried out under standardized criteria that would justify impoundment." *Id.* at ¶ 66.

On January 6, 2026, Plaintiff appeared before Orchard Park Town Justice Michael J. Pastrick ("Justice Pastrick") on the traffic ticket arising from the August 18, 2025 vehicle stop. *Id.* at ¶ 74. She "was denied a meaningful opportunity to be heard" by Justice Pastrick, who excluded certain evidence. *Id.* at ¶ 75. An appeal of Justice Patrick's decision remains pending. *Id.* at ¶ 76.

Plaintiff seeks monetary (compensatory and punitive) damages, as well as prospective declaratory and injunctive relief. *Id.* at 17-18.

## III. Section 1983 Claims

### A. Fourth Amendment

#### 1. Illegal Stop

The Fourth Amendment permits officers to "stop a vehicle, including for pretextual reasons, where there is reasonable suspicion that a traffic violation occurred." *United States v. Mezger*, No. 7:25-CR-00298 (PMH), 2026 WL 2884439, at *7 (S.D.N.Y. Sept. 25, 2026). Plaintiff alleges that the stop of her vehicle was done as a "pretext to carry out the planned mental-health seizure." Dkt. 5 at ¶ 103. But she specifically disputes that there was reasonable suspicion of a traffic violation, noting that while she was ticketed for "a defective stop lamp," the vehicle had passed inspection less than two weeks earlier. Dkt. 5 at ¶¶ 49, 103.

This claim may, therefore, proceed to service against Fowler, LoCoco, and the John and Jane Doe Officers.[3]

#### 2. Seizure of Plaintiff

Plaintiff alleges that she was "intentionally confined . . . on August 18, 2025 by . . . having her transported involuntarily to ECMC for a mental-health evaluation." Dkt. 5 at ¶ 100. These allegations indicate that Plaintiff's seizure occurred under the New York Mental Hygiene Law.

---

[3] When a plaintiff seeks "damages in a [Section] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). If it would, the court must dismiss the complaint, unless the conviction or sentence has been invalidated. But "courts have held that *Heck* does not apply to non-criminal traffic violations." *Greenidge v. Suffolk Cnty. Police Dept.*, 25-CV-3604-SJB-JMW, 2026 WL 2655203, at *3 (E.D.N.Y. Sept. 9, 2026).

"Requirements for arrests pursuant to the New York Mental Hygiene Law are interpreted 'consistently with the requirements of the Fourth Amendment.'" *Dunkelberger v. Dunkelberger*, No. 14-CV-3877 KMK, 2015 WL 5730605, at *11 (S.D.N.Y. Sept. 30, 2015) (quoting *Kerman v. City of New York*, 261 F.3d 229, 240 n.8 (2d Cir. 2001)).[4] "Under New York Mental Hygiene Law § 9.41, New York police officers may 'take into custody any person who appears to be mentally ill and is conducting themself in a manner which is likely to result in serious harm to the person or others.'" *Lurch v. City of New York*, No. 1:25-CV-07416 (JLR), 2026 WL 2516994, at *4 (S.D.N.Y. Aug. 26, 2026) (quoting N.Y. Mental Hyg. Law § 9.41(a)).

Here, Plaintiff alleges that her confinement was not privileged because there was an absence of probable cause to believe that she was a danger to herself or others. Dkt. 5 at ¶ 102. In particular, she alleges that she was acting in a "calm and compliant" manner and that law enforcement relied on "unverified statements[.]" *Id.* These facts are sufficient at this stage to permit this claim to proceed against Fowler, LoCoco, and the John and Jane Doe Officers.[5]

---

[4] To state a claim for false arrest under the Fourth Amendment, a plaintiff must allege: "(1) the Officers intended to confine h[er]; (2) [s]he was conscious of the confinement; (3) [s]he did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Cotton v. McCarthy*, No. 06-CV-477S, 2009 WL 3165606, at *2 (W.D.N.Y. Sept. 28, 2009), *aff'd*, 383 F. App'x 26 (2d Cir. 2010).

[5] Permitting this or any claim to proceed to service does not insulate it from a motion to dismiss under Federal Rule of Civil Procedure 12 or motion for summary judgment under Federal Rule of Civil Procedure 56.

### 3. Search of the Vehicle

Warrantless searches are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). "The principal exceptions include searches on consent, searches incident to a lawful custodial arrest, inventory searches of the property of a person who has been lawfully arrested, searches based on evidence lying in plain view, and automobile searches based on probable cause to believe the vehicle contains contraband or evidence[.]" *McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir. 1997) (internal citations omitted).

Plaintiff disputes the applicability of these exceptions. Dkt. 5 at ¶ 108. Nor is it her obligation to "plead facts affirmatively showing the absence of any exception to the warrant requirement[.]" *Payne v. Galie*, 574 F. App'x 26, 27 (2d Cir. 2014) (summary order). This claim may, therefore, proceed to service against Fowler, LoCoco, and the John and Jane Doe Officers.

### 4. Seizure of the Vehicle

The impoundment of Plaintiff's vehicle falls within the community caretaking exception to the Fourth Amendment's warrant requirement. Under the community caretaking exception, police officers "'may exercise their discretion in deciding whether to impound a vehicle,' and 'whether a decision to impound is reasonable under the Fourth Amendment is based on all the facts and circumstances of a given case.'" *VW Credit Leasing LTD. v. Runway Towing Corp.*, 757 F. Supp. 3d 271, 284 n.6 (E.D.N.Y. 2024) (quoting *United States v. Lyle*, 919 F.3d 716, 728, 731 (2d Cir.

2019), *recon. denied*, No. 20-CV-05306 (HG) (MMH), 2025 WL 501218 (E.D.N.Y. Feb. 14, 2025).

At this stage, Plaintiff's allegations—that the vehicle was lawfully parked on the side the road, that she "understood that someone would be allowed to pick the vehicle up[,]" and that the seizure was not "carried out under standardized criteria that would justify impoundment"—are sufficient to permit this claim to proceed to service against Fowler, LoCoco, and the John and Jane Doe Officers. Dkt. 5 at ¶¶ 64, 66.[6]

### 5. Excessive Force

The Supreme Court has held that where a claim for excessive force "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). An arrestee's excessive force claim "is therefore analyzed under the Fourth Amendment's 'reasonableness' standard, rather than under the subjective 'substantive due process' approach." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396-97).

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (quoting *Graham*, 490 U.S. at 396). Determining whether the amount of force an officer used "is reasonable 'requires a careful balancing of the nature and quality of

---

[6] For purposes of screening, the Court assumes, without deciding, that Plaintiff has a sufficient possessory or other property interest to challenge the seizure of the vehicle.

the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham*, 490 U.S. at 396). Consequently, "a government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest" or a detention. *Id.*

In making this determination, courts look to a variety of factors, including: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used, the extent of injury inflicted," and (3) "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016).

Notwithstanding being "calm, compliant, . . . and not resisting," Plaintiff alleges that she was "grabbed," had her wrist "twisted," and was "forced" into the ambulance causing both pain and injury. Dkt. 5 at ¶¶ 111-12. At this early stage, these allegations are sufficient to state a colorable excessive force claim that may proceed to service against Fowler, LoCoco, and the John and Jane Doe Officers.[7]

---

[7] While Plaintiff identifies only one unidentified officer as being the perpetrator (Dkt. 5 at ¶ 112), the Court permits the claim to proceed against all of the named defendant officers present on a failure to intervene theory. *See James Biggs v. City of New York*, No. 08 CIV. 8123 PGG, 2010 WL 4628360, at *6 n.12 (S.D.N.Y. Nov. 16, 2010) ("A police officer is personally involved in the use of excessive force if he or she either: (1) 'directly participates . . . or (2) fails 'to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'" (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

### B. Fourteenth Amendment

#### 1. Procedural Due Process

There are two elements to a procedural due process claim: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dept.*, 692 F.3d 202, 218 (2d. Cir. 2012) (citing *Narumanchi v. Bd. of Trustees,* 850 F.2d 70, 72 (2d Cir. 1988)).

Similar to the procedural due process claim raised in the complaint, Plaintiff alleges that she was "denied the opportunity to present relevant evidence during traffic court." Dkt. 5 at ¶ 117. She also raises two new procedural due process claims. The first arises from Plaintiff's seizure under the Mental Hygiene Law, and the second from the procedure to obtain her impounded vehicle. *Id.* at ¶¶ 115-16.

##### *a) Traffic Court*

Plaintiff has not stated a procedural due process claim arising from her traffic court proceeding. It is Justice Pastrick—not any of the named defendants—who is alleged to have deprived her of due process. Dkt. 5 at ¶¶ 74-75. And Justice Pastrick's actions, taken in his capacity as a Town Justice, would be shielded by absolute immunity. *See Folino v. Town of Niagara,* No. 07-CV-407, 2008 WL 4425556, at *9 (W.D.N.Y. Sept. 29, 2008) ("Justice Teixeira was acting at all times in his capacity as the Town Justice following plaintiff's arrest, plaintiff's claims are foreclosed by the doctrine of absolute immunity."). This procedural due process claim is dismissed without leave to amend. *See Hahn v. New York*, 825 F. App'x 53,

55 (2d Cir. 2020) (summary order) (affirming a dismissal on judicial immunity grounds without granting leave to amend); *Brady v. Ostrager*, 834 F. App'x 616, 619 (2d Cir. 2020) (summary order) ("Given . . . judicial immunity, the district court correctly held that amendment would be futile."); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of 28 U.S.C. § 1915(g).").[8]

### *b) Seizure under the Mental Hygiene Law*

Plaintiff's procedural due process claim arising from her Mental Hygiene Law seizure is not well-defined. She merely alleges that she had "an interest in freedom from involuntary detention" and that she was deprived of that interest by being "detain[ed] . . . under the mental-hygiene authority." Dkt. 5 at ¶ 115.

As best the Court can discern, Plaintiff is alleging that she should not have been taken into custody under the Mental Hygiene Law without a hearing or other process. But since "individuals taken to a hospital under New York Mental Hygiene Law § 9.41 are not entitled to a hearing beforehand," Plaintiff "cannot assert a procedural due process claim under this statute." *Matthews v. City of New York*, No. 15-CV-2311 (ALC), 2016 WL 5793414, at *7 (S.D.N.Y. Sept. 30, 2016) (citations omitted). This claim is, therefore, dismissed. Because amendment would be futile, this claim is dismissed without leave to amend.

---

[8] The Court recognizes that when screening the complaint, it permitted this claim to proceed, but the additional allegations in the amended complaint, which identify Justice Pastrick as the only individual with personal involvement in the claim, necessitates dismissal.

### *c) Impound*

Plaintiff appears to assert a due process claim arising from the notice and post-seizure procedures to obtain her impounded vehicle. Specifically, Plaintiff alleges that following the seizure of the vehicle she was not provided any notice explaining why the vehicle was seized and was not afforded any opportunity to challenge the seizure before having to pay $400 in towing and impound fees to recover the vehicle. Dkt. 5 at ¶ 67.

"Many courts that have considered the issue have held that the owners of towed vehicles . . . are entitled to no less than post-deprivation notice and a hearing." *HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15 CIV. 5867 (MKB) (VMS), 2018 WL 3134414, at *9 (E.D.N.Y. Feb. 15, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018). "When the state impounds a car and conditions its return on the payment of fees, claimants are entitled to a hearing concerning the lawfulness of the impoundment and the fees charged. A municipality need not provide a hearing before it imposes fees, but must do so before a 'final deprivation of' the impounded vehicle." *Santander Consumer USA, Inc. v. Incorporated Village of Hempstead*, No. 22-CV-4428 (EK)(ARL), 2026 WL 2719971, at *11 (E.D.N.Y. Sept. 15, 2026) (internal citations omitted).

There is no allegation here that Plaintiff was facing a permanent deprivation of the vehicle or that she was deprived of notice of where and how to recover her vehicle. But even if Plaintiff had alleged sufficient facts to state a procedural due

process claim, she fails to state the personal involvement of any particular Defendant in denying her due process and there are no allegations that the Town of Orchard Park violated her due process rights as a result of a municipal policy, custom, or failure to train or supervise, as discussed below.

This claim is, therefore dismissed, but since this is the first time Plaintiff has raised this claim, the dismissal is with leave to amend.

**2. Substantive Due Process**

In order to allege a substantive due process claim under Section 1983, a plaintiff must show: "(1) a 'fundamental liberty interest,' (2) the deprivation of which was 'arbitrary in the constitutional sense.'" *Leder v. Am. Traffic Sols., Inc.*, 630 F. App'x 61, 62 (2d Cir. 2015) (first quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); and then quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)). Substantive due process "protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense," but "not against government action that is incorrect or ill-advised." *Tavares v. Amato*, 954 F. Supp. 2d 79, 98 (N.D.N.Y. 2013) (quoting *Lowrance,* 20 F.3d at 537).

"However, the Supreme Court has 'narrowed the scope of substantive Due Process to claims that are not covered by other provisions of the Constitution.'" *20 Dogwood LLC v. Village of Roslyn Harbor*, No. 23-930, 2024 WL 1597642, at *1 (2d Cir. Apr. 12, 2024) (summary order) (quoting *Hu v. City of New York*, 927 F.3d 81, 103 (2d Cir. 2019)). Consequently, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct

in a [Section] 1983 suit cannot make reference to the broad notion of substantive due process." *Id.* (qutoing *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005)).

Because Plaintiff has redress for her claims under other provisions of the Constitution, this claim is dismissed without leave to amend.

**3. Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Typically, a plaintiff asserting an equal protection claim "must allege that similarly situated persons have been treated differently" than the plaintiff. *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).

But "[a] plaintiff alleging an equal protection claim under a theory of discriminatory application of the law, or under a theory of discriminatory motivation underlying a facially neutral policy or statute, generally need not plead or show the disparate treatment of other similarly situated individuals." *Pyke v. Cuomo*, 258 F.3d 107, 108-09 (2d Cir. 2001). "In effect, . . . 'the law presumes' plausible allegations of discriminatory motivation to be equivalent to allegations of differential treatment from similarly situated comparators." *Walston v. City of New York*, 2024 WL 1376905, at *10 (S.D.N.Y. Mar. 7, 2024) (citation omitted), *report and recommendation adopted*, 2024 WL 1374837 (S.D.N.Y. Apr. 1, 2024).

"Where . . . a plaintiff does not claim to be a member of a constitutionally protected class, [s]he may bring an Equal Protection claim pursuant to one of two

theories: (1) selective enforcement, or (2) 'class of one.'" *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013). A class-of-one claim requires a plaintiff to allege plausibly that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This requires that she plead "an extremely high degree of similarity" between comparators. *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

To plead a selective enforcement claim, a plaintiff must plausibly allege that (1) "compared with others similarly situated, [she] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as . . . religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra*, 48 F.3d at 683). A "'reasonably close resemblance' between a plaintiff's and comparator's circumstances" is required. *Id.* at 93.

In the initial screening order, the Court dismissed this claim explaining that Plaintiff failed "to allege any facts, other than mere conclusions, as to how her 'status as a domestic violence victim and a woman asserting custody and parental rights' caused her to suffer from selective enforcement or that she was treated differently from others similarly situated." Dkt. 3 at 12. This deficiency—at this stage—has been remedied in the amended complaint, which contrasts the conduct of Defendants toward Hill with the conduct she experienced. Specifically, she points

to the failure to document her "custody-related" reports, while fully crediting the reports from the Hill, which ultimately resulted in her seizure. Dkt. 5 at ¶ 123.

At this early stage, these allegations are sufficient to state a colorable equal protection claim that may proceed to service against the John/Jane Doe Supervisor,[9] Putnam, Fitzgerald, Fowler, LoCoco, and John and Jane Officers—the only defendants with any alleged personal involvement in the violation.

### C. First Amendment

Based on the allegations of the complaint, the initial screening order concluded that "Plaintiff has alleged a colorable First Amendment retaliation claim that may proceed to service." Dkt. 3 at 16. Nothing has changed in the amended complaint. This claim may, therefore, proceed against John/Jane Doe Supervisor, Putnam, Fitzgerald, Fowler, LoCoco, and the John and Jane Doe Officers—the only defendants who are alleged to have personal involvement in the adverse actions. Dkt. 5 at ¶ 128 (identifying the adverse actions as "refusing to document reports, the traffic stop, the mental-hygiene detention, and the seizure of her vehicle").

### D. Municipal Liability

A municipality cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To state such

---

[9] While Plaintiff names John/Jane Doe Supervisors 1-5, the amended complaint specifically identifies only one supervisor involved in the alleged conduct. *See* Dkt. 5 at ¶ 32 (specifying that an unidentified supervisor refused to take Plaintiff's report).

a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

An official policy or custom can be established by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Kurmangaliyev v. City of New York*, 2023 WL 8654023, at *2 (E.D.N.Y. Dec. 14, 2023) (citing cases).

Plaintiff makes several allegations in support of the existence of municipal liability. In particular, she points to having alerted OPPD leadership, including Fitzgerald, of problems with its training on mental hygiene detentions and its practice of accepting third-party allegations against her without verification, several months before the August 18, 2025 stop, but no corrective action was taken. Dkt. 5 at ¶¶ 87-94.

These allegations sufficiently allege a basis for imposing municipal liability. Therefore, the Section 1983 claims proceeding to service may proceed to service against the Town of Orchard Park.[10]

---

[10] While Plaintiff points to facts that suggest a policy or custom of the Town of Orchard Park was responsible for the constitutional violations proceeding to service, nothing she alleges suggests that a policy or custom of the Town of Orchard Park

### E. State Law Claims

Corresponding to Plaintiff's Fourth Amendment excessive force and false arrest claims, Plaintiff asserts state law false arrest and assault and battery claims, Dkt. 5 at ¶¶ 135-42, which may also proceed to service.

Plaintiff further alleges a claim for negligence against the Town of Orchard Park resulting from the damage to her vehicle. *Id.* at ¶¶ 143-47. This claim may likewise proceed to service.

## CONCLUSION

For the reasons above, Plaintiff's Fourth Amendment, First Amendment retaliation, Fourteenth Amendment equal protection, municipal liability, and state law claims may proceed to service as identified above. With the exception of Plaintiff's Fourteenth Amendment procedural due process claim arising from the post-seizure procedure to obtain her vehicle—which is dismissed with leave to amend—Plaintiff's claims are otherwise dismissed without leave to amend.

## ORDER

IT HEREBY IS ORDERED that the following claims may proceed to service:

- Fourth Amendment claims arising from the illegal stop and seizure of Plaintiff's person and vehicle, search of the vehicle, and excessive force against Fowler, LoCoco, and the John and Jane Doe Officers;

---

caused a deprivation of due process in the procedure for Plaintiff to obtain her vehicle from impound.

- First Amendment retaliation claim against John/Jane Doe Supervisor, Putnam, Fitzgerald, Fowler, LoCoco, and the John and Jane Doe Officers;
- Fourteenth Amendment equal protection against John/Jane Doe Supervisor, Putnam, Fitzgerald, Fowler, LoCoco, and the John and Jane Doe Officers;
- Municipal liability against the Town of Orchard Park for the Section 1983 claims; and
- State law claims; and it is further

ORDERED that Plaintiff's procedural due process claim arising from the post-seizure procedure to obtain her vehicle is dismissed with leave to amend under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim; and it is further

ORDERED that Plaintiff's remaining claims are dismissed without leave to amend under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim; and it is further

ORDERED that the Clerk of Court is directed to terminate Vranic and Andolina as Defendants;[11] and it is further

---

[11] To the extent Plaintiff names Chief Brendon O'Hara ("O'Hara") as a defendant, he will remain in the case at this stage insofar as the amended complaint seeks prospective injunctive relief. *See Brown v. Quiros*, No. 3:25-CV-1202 (KAD), 2026 WL 242137, at *10 (D. Conn. Jan. 29, 2026) ("[A] claim for injunctive relief can only proceed against defendants who 'plausibly have the authority to grant the prospective relief.'").

ORDERED that the Clerk of Court shall cause the United States Marshals Service to serve copies of the summons, the amended complaint (Dkt. 5), and this Decision and Order upon the Town of Orchard Park, John/Jane Doe Supervisor (once identified), Putnam, Fitzgerald, Fowler, LoCoco, O'Hara, and the John and Jane Doe Officers (once identified), without Plaintiff's payment thereof, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further;

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (1997), the Town of Orchard Park Attorney is requested to ascertain the full name, with correct spelling, and last known service address of the John/Jane Doe Supervisor (referenced at ¶ 32 of the amended complaint) and John and Jane Doe Officers involved in the events of August 18, 2025. The Town Attorney need not undertake to defend or indemnify these individuals at this time. Rather, this Order merely provides a means by which Plaintiff may name and properly serve these Defendants, as instructed by the Second Circuit in *Valentin*.

The Town Attorney shall produce the information specified above by mail (Pro Se Litigation Unit, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202) within 30 days of the date of this Decision and Order. Upon receipt of this information, the Clerk of Court shall amend the caption of this action to reflect the full name of these Defendants; and it is further

ORDERED that the Clerk of Court shall forward a copy of the amended complaint (Dkt. 5) and this Decision and Order by email to Town Attorney Timothy

D. Gallagher at gallaghert@orchardparkny.gov and by mail to 4295 South Buffalo Street, Orchard Park, NY 14127; and it is further

ORDERED that pursuant to Western District of New Yok Local Rule 5.2(d), Plaintiff must inform the Court immediately, in writing, of any change of address. Failure to do so may result in dismissal of the case.

SO ORDERED.

Dated: November 2, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE